## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | | |
|---|---|---|
| Alexandria Denise Graham, | ) | Civil Action No.:_____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| Santander Consumer USA, Inc., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

1.      This is an action brought by Plaintiff, Alexandria Denise Graham, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA"), and the South Carolina Unfair Trade Practices Act. S.C. Code Ann. §39-5-10, et seq.  Plaintiff also seeks compensatory and punitive damages for the Defendant's violations of South Carolina common law set forth herein.

2.      The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.      Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in

a credit report." S. Rep. No. 91-517 (1969).

4.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

5.     One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

7.     This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.

§1681p, and 28 U.S.C. §1331, §1332 and §1367.

8.      Venue is proper in the Florence Division because the Plaintiff resides in Horry County and the Defendant transacted business in this division.

## PARTIES

9.      Plaintiff, Alexandria Denise Graham, is a resident and citizen of the State of South Carolina, Horry County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10.     Defendant Santander Consumer USA, Inc. (hereinafter referred to as "Defendant") is an Illinois corporation.  Defendant may be served with process through its registered agent for service of process, CT Corporation System, 2 Office Park Court, Suite 103, Columbia, SC 29223.  In all respects and at all times relevant herein, Defendant was doing business in the state of South Carolina.

## FACTUAL ALLEGATIONS

11.     On or about May 20, 2015, Plaintiff obtained an auto loan through Defendant.

12.     On May 2, 2021, Defendant repossessed Plaintiff's car.  Plaintiff called Defendant and was given the total account balance and was informed that in order for Plaintiff to get her car back, she would need to pay the entire balance in full.

13.     The total account balance provided by Defendant to Plaintiff in order for her to get her car back was $4,512.48.

14.     On May 6, 2021, Plaintiff sent Defendant, via MoneyGram Payment Systems, Inc., payment in the amount of $4,512.48 as payment in full of total account balance.

15.     On that same day, May 6, 2021, Plaintiff called Defendant to confirm they had

received her $4,512.48 payment.  During the phone call, Defendant confirmed receipt of the payment and congratulated Plaintiff for paying off her car.  When Plaintiff asked if everything was paid, she was told she owed nothing and that she would be receiving the title to her car within the next 30 days.

16.    On or about August 7, 2021, Plaintiff went online to Credit Karma to check her credit score and discovered that her TransUnion credit score had dropped 85 points to a credit score of 513.

17.    On or about August 19, 2021, Plaintiff discovered through Credit Karma that her credit scores for all credit reporting bureaus had dropped another 34 points to 481.

18.    On or about January 24, 2022, Plaintiff reviewed her Experian credit report on Experian.com.  Defendant was reporting the account as "Account charged off. $785 written off.  $785 past due as of Jan 2022."  Plaintiff was confused by this as she had paid the car off in full.

19.    On or about April 15, 2022, Plaintiff again checked Credit Karma.  The Defendant was reporting the account with a balance that had  increased by $1.00 on Plaintiff's Equifax credit report.

20.    Plaintiff called Defendant several times requesting the title to her car, but each time she was told that it would be forthcoming within 30 days.

21.    On or about May 2, 2022, *almost a year after Plaintiff paid in full the amount quoted by Defendant to pay off the car in full,* Plaintiff received a letter claiming she now owed by May 16, 2022, $785.05 to pay off the car.

22.    On or about May 9, 2022, Plaintiff sent a written dispute letter to Defendant.  In her

letter, Plaintiff stated she was tired of Defendant making up excuses to hold the title to her car, destroying her credit, keeping her from getting new credit, and wrongfully refusing to give her the title. Plaintiff also informed Defendant that she paid the total account balance of $4,512.48, which Defendant quoted to her to pay off the vehicle, by way of MoneyGram on May 6, 2021 and when she called to confirm their receipt of payment, she was congratulated on paying her car off and was told she would receive the title within 30 days. Plaintiff also stated it had been more than one year and she had still not received the title from Santander, and that no one from Defendant had ever contacted her to say she owed a balance. Plaintiff also stated that when she called Defendant in May of 2022 to see what was going on, Defendant confirmed that no one ever contacted her about the supposed balance. Plaintiff disputed owing any charges and demanded Defendant to send her title to her car immediately.

23.    Defendant received Plaintiff's First Dispute on May 16, 2022.

24.    On or about May 9, 2022, Plaintiff obtained a copy of her Equifax credit report. Equifax was reporting a Defendant Account as a charged off account with a past due balance of $785.00.

25.    On or about May 9, 2022, Plaintiff attempted to obtain a copy of her Experian credit report through annualcreditreport.com, but was denied a copy.

26.    On or about May 9, 2022, Plaintiff obtained a copy of her TransUnion credit report through annualcreditreport.com. TransUnion was reporting a Defendant Account as a charged off account with a past due balance of $785.00.

27.    On or about May 9, 2022, Plaintiff sent a written dispute letter to Equifax. In her

letter, Plaintiff informed Defendant that Santander Consumer USA, Acct #xxxx1000 should be reporting a zero balance and closed as she had previously paid off the car in full after repossession. Plaintiff also provided Equifax with her full Social Security Number, her date of birth, and her address. Equifax received Plaintiff's dispute on May 14, 2022, and thereafter forwarded a copy to Defendant.

28.     On or about May 9, 2022, Plaintiff also sent a written dispute letter to Experian. In her letter, Plaintiff informed Experian that she tried to get a copy of her Experian credit report online through annualcreditreport.com but was denied. In her letter, Plaintiff informed Defendant that she reviewed her Equifax and TransUnion credit reports and the Santander Consumer USA, Acct #xxxx1000 should be reporting with a zero balance and as a closed account as she had previously paid off the car in full to Defendant after repossession. Plaintiff also provided Experian with her full Social Security Number, her date of birth, and her address.

29.     Experian received Plaintiff's dispute on May 10, 2022, and thereafter forwarded a copy to Defendant.

30.     On or about May 9, 2022, Plaintiff sent a written dispute letter to TransUnion. In her letter to TransUnion, Plaintiff disputed the Santander Account as incorrect. Plaintiff specifically informed TransUnion that Santander had repossessed the car and provided her with a payoff amount of $4,512.48 to pay the loan in full. Plaintiff paid that amount and received her car from Santander. Plaintiff informed TransUnion the Santander account should be closed with a zero balance and asked TransUnion to make the correction immediately as it was causing her to be denied credit.

31.     TransUnion received Plaintiff's dispute on May 13, 2022, and forwarded same to Defendant.

32.     On or about May 19, 2022, TransUnion sent Plaintiff it's Investigation Results wherein TransUnion informed Plaintiff that Defendant had verified the Santander Consumer USA account as accurate.  As a result, the Santander Consumer USA account continued to be reported as an adverse account belonging to Plaintiff, with a charge-off balance of $5,035.00, and a past due balance of $785.00.

33.     On or about May 24, 2022, Plaintiff received the results of Equifax's alleged reinvestigation into her dispute.  Defendant had again verified the Santander Consumer USA account as accurate and indicated the Account had not been closed.

34.     Experian did not respond to Plaintiff's dispute letter.

35.     On or about July 6, 2022, Plaintiff sent a second written dispute letter to Defendant. In her letter, Plaintiff stated she had not received a response from Defendant to her previous dispute.  Plaintiff stated Defendant continued to wrongfully hold the title to her car and refused to return it to her.  Plaintiff also informed Defendant that she had paid the total account balance of $4,512.48 to Defendant by way of MoneyGram on May 6, 2021. Plaintiff informed Defendant that when she called to confirm their receipt of payment, she was congratulated on paying her car off and was told she would receive her title within 30 days.  Plaintiff provided Defendant a copy of the MoneyGram receipt proving payment of $4,512.48 was made to Defendant on May 6, 2021. Plaintiff reiterated it had been one year and she had still not received her title from Defendant, and that no one from Defendant had ever contacted her to say she owed anything.  When Plaintiff called Defendant in May of

2022, Defendant confirmed that no one had made any contact with Plaintiff or informed her about any alleged outstanding charges to Defendant. Plaintiff specifically disputed owing anything to Defendant and demanded Defendant send her title to her immediately. Finally, Plaintiff requested Defendant send her a copy of every monthly statement since May 1, 2021.

36.    Defendant received Plaintiff's direct dispute on July 11, 2022.

37.    On or about July 6, 2022, Plaintiff sent a second written dispute letter to Equifax in which she stated that she had received Equifax's Investigation Results, and the Santander Consumer USA account was still reporting incorrectly on her credit report. Plaintiff stated the Santander Consumer USA, Acct #xxxx1000 should be reporting with a zero balance and closed as she had previously paid $4,512.48 to pay off the car in full to Defendant. With her letter, Plaintiff included a copy of the MoneyGram receipt.

38.    Equifax received Plaintiff's second dispute on July 9, 2022, and thereafter forward it to Defendant.

39.    On or about July 6, 2022, Plaintiff sent a second written dispute letter to Experian in which she stated that she had not received a response from Experian to her first dispute, nor had she received a copy of her credit report. Plaintiff again informed Experian the Santander Consumer USA, Acct #xxxx1000 should be reporting with a zero balance and as a closed account as she had previously paid off the account in full to Defendant after repossession. Plaintiff also provided Experian with a copy of the MoneyGram receipt to Defendant showing the payment of $4,512.48.

40.    Experian never responded to Plaintiff's second dispute.

41.    On or about July 6, 2022, Plaintiff sent a second written dispute letter to TransUnion in which she stated that she had received TransUnion's Investigation Result, and the Santander Consumer USA account was still reporting incorrectly on her credit report. Plaintiff reiterated that the Santander account was not correct, that Santander had repossessed the car and provided her with a payoff amount of $4,512.48 to pay off the car in full.  In her letter, Plaintiff informed TransUnion she had paid the account in full on May 6, 2021, and Defendant returned her car to her.  Plaintiff also enclosed a copy of the May 6, 2021 MoneyGram receipt showing the payment of $4,512.48 sent to Santander Consumer USA.  Plaintiff informed TransUnion the Santander account should be reporting as closed with a zero balance and asked TransUnion to make the correction immediately as it was causing her to be denied credit.

42.    TransUnion received Plaintiff's second dispute on July 11, 2022, and thereafter forwarded it to Defendant.

43.    On or about July 14, 2022, Plaintiff received the results of Equifax's alleged reinvestigation into her second dispute showing Defendant had again verified the account as accurate.

44.    On or about July 19, 2022, TransUnion sent Plaintiff its Investigation Results wherein TransUnion informed Plaintiff that Defendant had updated the account and that the original charge-off, date closed, rating, and date updated were all changed. TransUnion also provided Plaintiff with a copy of her updated TransUnion credit report which confirmed that the Santander Consumer USA account was continuing to be reported incorrectly as having a charge-off balance of $785.00, and a  past due balance of $785.00.

45.    Experian did not respond to Plaintiff's second dispute Letter.

46.    On or about July 22, 2022, Plaintiff went online to Credit Karma and discovered that her TransUnion credit score had dropped 55 points to 589 due to "1 late payment."

47.    On or about August 6, 2022, Plaintiff checked Credit Karma and discovered that Defendant was reporting the account as "Currently late," and with "1 Missed" payment.

48.    On or about August 16, 2022, Plaintiff received a "Limited Time Settlement Offer Available" letter from Defendant stating Defendant's records showed Plaintiff had a total balance due of $785.05, but it was willing to accept $274.77 to settle the account in full. The offer was good until October 15, 2022.

49.    On or about January 6, 2023, Plaintiff sent a third dispute letter to Equifax in which she informed Equifax that she had received Equifax's Investigation Results, and the Santander Consumer USA account was still reporting incorrectly on her credit report. Plaintiff again informed Equifax the Santander Consumer USA, Acct #xxxx1000 should be reporting a zero balance and closed as she had previously paid off the account in full to Defendant.  Plaintiff included a copy of the MoneyGram receipt showing the $4,512.48 payment with her letter.   Equifax received Plaintiff's third dispute on January 11, 2023, and thereafter forwarded same to Defendant.

50.    On or about January 6, 2023, Plaintiff sent a third dispute letter to Experian in which she again informed Experian that the Santander Consumer USA, Acct #xxxx1000 should be reporting with a zero balance and as a closed account as she had previously paid off the account in full.  Plaintiff provided Experian a copy of the MoneyGram receipt showing the $4,512.48 payment to Defendant.  Experian received Plaintiff's third dispute on January 11,

2023, and thereafter upon information and belief, forwarded same to Defendant.

51.    On or about January 6, 2023, Plaintiff sent a third dispute letter to TransUnion in which she again disputed the Santander Consumer USA account as reporting incorrectly. Plaintiff informed TransUnion that Santander had repossessed her car and provided her with the payoff amount of $4,512.48 in order for her to pay off her car and get her car back. Plaintiff informed TransUnion she paid the $4,512.48 on May 6, 2021 and again provided a copy of the May 6, 2021 MoneyGram receipt. Plaintiff stated the account should be reporting with a $0.00 balance and as closed. Plaintiff asked TransUnion to correct the account immediately as it was causing her to be denied credit. TransUnion received Plaintiff's third dispute on January 10, 2023, and thereafter forwarded a copy to Defendant.

52.    On or about January 18, 2023, TransUnion forwarded Plaintiff its Investigation Results wherein TransUnion stated they investigated the disputed information, and Defendant had made changes to Date Updated, Date Closed, and Rating, but Defendant continued to report the Account incorrectly as a charge-off account, with the charge-off amount of $5,579.00, and a past due balance of $785.00.

53.    On or about January 21, 2023, Plaintiff received the results of Equifax's alleged reinvestigation into her third dispute stating Defendant had verified the balance being reported was correct and that Defendant continued to report the account as open.

54.    On or about April 14, 2023, Plaintiff received another "Limited Time Settlement Offer Available" letter from Defendant again stating Plaintiff owed $785.05, but Defendant was willing to accept $78.51 to settle the account in full. The offer was good until June 13, 2023.

55.    On or about May 12, 2023, in response to Defendant's April 14, 2023, letter, and because Defendant continued to wrongfully withhold Plaintiff's car title, Plaintiff sent Defendant via certified mail an "Official Check" from TD Bank for the amount of $78.51 in order to receive the title to her car.

56.    On or about July 20, 2023, Plaintiff viewed a copy of her Experian credit report online.  Defendant was still reporting the disputed account as a collection/charge-off account with a balance due of $706.00.

57.    On November 22, 2023, Plaintiff received an email from Pathlight Property Management declining her recent rental application for a home in Myrtle Beach, South Carolina.  The denial was based on her credit score of 531 as reported by TransUnion.

58.    On or about December 19, 2023, Plaintiff applied for an apartment at Artisan Carolina Forest in Myrtle Beach, South Carolina, but was denied via email correspondence on December 28, 2023.

59.    On or about December 19, 2023, SafeRent Solutions provided Artisan Carolina Forest a report on Plaintiff showing her credit score was 315 and that, on June 2023, Defendant updated its reporting of Plaintiff's auto loan to show as a charged off account from June 2021 through June 2022, and as account paid for less than full balance.  All of that information was incorrect as Plaintiff had paid of the loan in full in May, 2021.

60.    On or about January 4, 2024, Plaintiff obtained a copy of her Equifax credit report online wherein she discovered Defendant was now reporting the account as a charged-off account with a charged-off balance of $5,579.00.

61.    On or about January 4, 2024, Plaintiff obtained a copy of her Experian credit report

online.  Defendant was continuing to incorrectly report the account as "Paid in settlement. $5,579 written off."

62.    On or about January 4, 2024, Plaintiff obtained a copy of her TransUnion credit report online.  Defendant was incorrectly reporting the account as "Account paid in Full was a Charge-off" and "Settled-Less than Full Blanc; Paid in Full/Was Charge-Off".

63.    On or about January 5, 2024, Plaintiff sent a fourth written dispute letter to Equifax stating it was still reporting the Santander Consumer USA account incorrectly.  Plaintiff informed Equifax that the Account should be reporting as paid off as of June 2021, that the entire balance was paid in full and there was no charge-off amount. Plaintiff requested Defendant to remove the charged off amount of $5,579.00.  Equifax received Plaintiff's fourth dispute on January 8, 2024, and thereafter forwarded same to Defendant.

64.    On or about January 5, 2024, Plaintiff sent a fourth written dispute letter to Experian again stating the Account should be reporting as paid in full after charge off and with a zero balance. Plaintiff also included a copy of the payment receipt. Experian received Plaintiff's fourth dispute on January 8, 2024, and thereafter upon information and belief, forwarded same to Defendant.

65.    On or about January 5, 2024, Plaintiff sent a fourth written dispute letter to TransUnion stating the Santander Consumer USA account was still reporting incorrectly. Plaintiff stated the remarks on her TransUnion credit report showing "settled-less than full blnc" was incorrect because the account was paid in full.  Plaintiff requested TransUnion to update her report to remove the incorrect remark and show the account was closed by June 2021 when the balance was paid in full.  TransUnion received Plaintiff's fourth dispute

13

on January 8, 2024, and thereafter forwarded same to Defendant.

66.    In January 2024, Plaintiff also received a 1099-C from Santander for charged off debt of $706.54. Said 1099-C is completely fraudulent and has caused Plaintiff further harm as she is now having to pay taxes on an amount she never owed.

67.    To date, Defendant continues to report the account incorrectly causing Plaintiff harm.

68.    Defendant failed to make a reasonable investigation into Plaintiff's disputes.

## COUNT ONE
### (Fair Credit Reporting Act)

69.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 68 hereinbefore as if fully set forth herein.

70.    Defendant violated 15 U.S.C. §1681s-2(b) by failing to investigate the accuracy of the information reported by the Defendant to the consumer reporting agencies.

71.    On at least one occasion within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.

72.    On at least one occasion within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

73.    As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: damage to reputation and

14

credit reputation, lost credit opportunities, denial of credit, embarrassment, humiliation, frustration, anxiety, loss of sleep, worry, physical sickness and pain, and mental anguish.

74.    The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a consumer reporting agency.

75.    The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

76.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by a jury pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT TWO
### (Fair Credit Reporting Act)

77.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 76 hereinbefore as if fully set forth herein.

78.    On one or more occasions within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) and (D) by publishing the Defendant's inaccuracies within Plaintiff's credit files with the credit reporting agencies by failing to correctly report results of an accurate investigation to each credit reporting agency.

79.    Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate,

incomplete, false, and misleading results of the investigation, if any, to at least one consumer reporting agency. This includes, but is not limited to, Defendant's failure to report the negative accounts set forth herein as disputed after receipt of a direct dispute from Plaintiff relating to same.

80.    Defendant violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the accounts the subject of this action was inaccurate, incomplete, false, and misleading.

81.    As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: damage to her credit and credit reputation, lost credit opportunities, denial of credit, increased cost of credit, and incurred out of pocket losses.  Additionally, Plaintiff suffered humiliation, anxiety, loss of sleep, frustration, worry, physical sickness and pain, and mental anguish, as well as damages for attorneys' fees.

82.    The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1681n.  In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

83.    The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees, pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT THREE
(South Carolina Unfair Trade Practices Act)

84.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 83 hereinbefore as if fully set forth herein.

16

85.    The activities of Defendant constitute "trade or commerce" as defined by South Carolina Code §39-5-10, *et seq.* (As amended).

86.    The actions of Defendant described above which occurred during the three years prior to the filing of this Complaint, including but not limited to, holding Plaintiff's title hostage in spite of the fact that the loan had been paid in full; threatening legal action that it could not legally take to collect an alleged debt; communicating credit information Defendant knew or should have known to be false; falsely representing the legal status, character or amount of an alleged debt; and using unfair and/or unconscionable means to collect an alleged debt; constitute unfair and deceptive acts and practices in the conduct of trade and commerce, as prohibited by the South Carolina Unfair Trade Practices Act, §39-5-10 *et seq.* and are knowing and willful violations thereof.

87.    Plaintiff further alleges that the actions of Defendant have a real and substantial potential for repetition and are a threat to the public interest.

88.    Plaintiff has suffered an ascertainable loss due to the unlawful actions of Defendant and is entitled, under §39-5-140, to recover actual damages in an amount to be proven at trial, treble of said actual damages for Defendant's knowing and willful behavior, and an award of reasonable attorney's fees and costs.

## COUNT FOUR
(Conversion)

89.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 88 hereinbefore as if fully set forth herein.

90.    After Plaintiff had paid off her automobile loan in full, Defendant continually

17

wrongfully held Plaintiff's title, thereby depriving Plaintiff of an interest in her automobile.

91.    The Plaintiff had an interest in her automobile.

92.    Defendant converted the Plaintiff's automobile by refusing to provide Plaintiff with her title.

93.    Plaintiff did not give Defendant permission to continue to hold the title to her automobile after payment in full was made by Plaintiff.

94.    Defendant continually demanded more money from Plaintiff in order for Plaintiff to get the title to her automobile.

95.    Having no alternative, Plaintiff was forced to pay additional money to Defendant to obtain title to her automobile.

96.    Due to Defendant's actions, the Plaintiff was deprived title to her vehicle for over two years, was unable to sell her vehicle, and suffered damages, including but not limited to costs incurred while attempting to receive title to her vehicle, anxiety, stress, humiliation, loss of sleep, mental suffering, attorney fees and out-of-pocket costs.

## COUNT FIVE
(Defamation)

97.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 96 hereinbefore as if fully set forth herein.

98.    During the three years prior to the filing of this Complaint, Defendant willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding the Plaintiff to third parties and the public at large.

99.    Said false and defamatory statements have harmed the reputation of the Plaintiff

and/or deterred third person from associating with the Plaintiff.

100.    Defendant communicated to the three credit reporting agencies, and other third parties, false information concerning the Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning the Plaintiff.

101.    Said communications were made to the three credit reporting agencies, to their agents and employees, and to the public at large.

102.    Said communications were false in that Plaintiff did not owe an outstanding balance to Defendant.

103.    At the time said communications were made, Defendant knew, or should have known, the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully and maliciously communicated the falsity.

104.    As a result of the intentional communications to third parties of the false information, the Plaintiff was caused to suffer injury to her reputation in the eyes of their community and the public, and/or was subjected to ridicule.

105.    Said communications were oral and written.

106.    As a proximate consequence of said defamation, libel and slander, the Plaintiff was caused to have negative credit reports, held up to public ridicule or shame, denied credit, suffered harm to her credit reputation, and was made to suffer anxiety, loss of sleep, anger, fright, physical pain and illness and mental anguish for which she claims compensatory and punitive damages.

## <u>AMOUNT OF DAMAGES DEMANDED</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.    For relief in amounts or other appropriate relief as may be determined for the Plaintiff's actual damages, for the Plaintiff's actual damages to be trebled by the Court as it deems proper, and attorneys' fees against Defendant for its violations of Sections 39-5-10, et seq. of the South Carolina Code of Laws Annotated;

E.    For compensatory and punitive damages in an amount to be determined by a struck jury for Defendant's conversion and defamation;

F.    For this matter to be heard by a jury; and

G.    For such other and further relief as the Court may deem just and proper.

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed.  ID No.  10323
Attorney for Plaintiff

<u>OF COUNSEL:</u>
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile

phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Santander Consumer USA, Inc.
c/o CT Corporation System – Registered Agent
2 Office Park Court, Suite 103
Columbia, SC 29223